UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | DOCKET NO. 3:21cr219 |
| ) | |
| v. ) | |
| ) | **FACTUAL BASIS** |
| **HUDSON HAMRICK** ) | |
| ) | |
| _____ ) | |

NOW COMES the United States of America, , by and through William T. Stetzer, Acting United States Attorney for the Western District of North Carolina, and hereby files this Factual Basis in support of the plea agreement filed simultaneously in this matter.

This Factual Basis is filed pursuant to Local Criminal Rule 11.2 and does not attempt to set forth all of the facts known to the United States at this time. By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to the plea agreement, and that the facts set forth in this Factual Basis are sufficient to establish all of the elements of the crime(s). The parties agree not to object to or otherwise contradict the facts set forth in this Factual Basis.

Upon acceptance of the plea, the United States will submit to the Probation Office a "Statement of Relevant Conduct" pursuant to Local Criminal Rule 32.4. The defendant may submit (but is not required to submit) a response to the Government's "Statement of Relevant Conduct" within seven days of its submission. The parties understand and agree that this Factual Basis does not necessarily represent all conduct relevant to sentencing. The parties agree that they have the right to object to facts set forth in the presentence report that are not contained in this Factual Basis. Either party may present to the Court additional relevant facts that do not contradict facts set forth in this Factual Basis.

1. From in or about October 2016 and continuing through in or about 2020, the defendant, HUDSON HAMRICK, a resident of Charlotte, North Carolina, executed a scheme to defraud Amazon.com, Inc. out of at least $250,000, by engaging in a fraudulent return scheme.

2. In general, the scheme worked as follows:

    a. HAMRICK would order expensive items through Amazon, often consumer electronics, guitars, tools, camera equipment, and other high-end consumer products.

    b. HAMRICK would then initiate the process to return the item to Amazon, obtaining a credit for the purchase price. Instead, of returning the purchased item, however, HAMRICK, in most instances, would return a different item, which was often cheaper

and/or broken. In other instances, HAMRICK would obtain a concession, *i.e.*, a shipment of a second replacement item, for items he claims not to have received or to have received damaged.

        c.     HAMRICK would then either keep the new, expensive item or resell the item on an online platform.

3.     As a result, HAMRICK received both the refund from Amazon and the proceeds for selling the item that he had falsely represented he was returning.

4.     Over the course of his scheme, HAMRICK engaged in more than 300 fraudulent transactions resulting in a loss amount greater than $250,000, including:

        a.     The return of more than 270 items, of which more than 250 were materially different in value from the product HAMRICK received and for which he received a full refund; and

        b.     Concessions on more than 40 items.

### Examples of Fraudulent Transactions

#### *Jura Professional Coffee Machine*

5.     On or about July 23, 2019, HAMRICK purchased from Amazon a Jura 15089 GIGA W3 Professional Automatic Coffee Machine for a purchase price of $3,536.46, which was shipped the following day to HAMRICK at an address in Charlotte, North Carolina.

6.     On or about July 31, 2019, HAMRICK initiated a return to Amazon, purportedly shipping back the Jura Professional Coffee Machine, and causing a refund in the amount of $3,536.46 to be issued to him.

7.     Instead of returning the Jura Professional Coffee Machine, HAMRICK returned a different coffee machine, a Jura 15068 Impressa C65 Automatic Coffee Machine, valued at least $2,000 less than the one he had fraudulently represented he was returning.

8.     On or about February 12, 2020, an account on Amazon associated with HAMRICK sold a Jura 15089 Giga W3 Professional Automatic Coffee Machine System with the same name and product number as the item HAMRICK had ordered and fraudulently represented that he was returning to Amazon.

#### *Apple iMac Pro*

9.     On or about August 7, 2019, HAMRICK purchased from Amazon an Apple iMac Pro for a purchase price of $4,256.85, which was shipped two days later to HAMRICK at an address in Charlotte, North Carolina.

2

10. On or about August 20, 2019, HAMRICK initiated a return to Amazon, purportedly shipping back the Apple iMac Pro the following day, and causing a refund in the amount of $4,256.85 to be issued to him.

11. Instead of returning the high-end iMac Pro, HAMRICK returned a much older, less valuable non-Pro model with a completely different serial number than the one he had fraudulently represented he was returning.

12. On or about August 13, 2019, an account on eBay associated with HAMRICK sold an Apple iMac Pro that matched the description of the item HAMRICK had ordered and fraudulently represented that he was returning to Amazon.

### *ROG Zephyrus Gaming Laptop*

13. On or about September 2, 2019, HAMRICK purchased from Amazon a ROG Zephyrus S GX701 Gaming Laptop, which was shipped the same day to HAMRICK at an address in Charlotte, North Carolina.

14. On or about September 10, 2019, HAMRICK initiated a return to Amazon, purportedly shipping back the ROG Zephyrus Gaming Laptop the following day, and causing a refund in the amount of $2,776.52 to be issued to him.

15. Instead of returning the high-end ROG Zephyrus Gaming Laptop, HAMRICK returned an Asus Vivobook laptop, valued at over $2,300 less than the ROG Zephyrus Gaming Laptop he had fraudulently represented he was returning.

### *Fuji Spray System*

16. On or about February 2, 2020, HAMRICK purchased from Amazon a Fuji 2895-T75G Platinum Quiet HVLP Spray System ("Fuji Spray System") for a purchase price of $1,227.31, which was shipped the following day to HAMRICK at an address in Rock Hill, South Carolina.

17. On or about February 3, 2020, HAMRICK initiated a return, purportedly for the Fuji Spray System, which was shipped the following day. In light of his prior conduct, Amazon blocked the refund to HAMRICK.

18. Instead of returning the Fuji Spray System, HAMRICK returned a materially different and lower value model that retails for $349.

   a. On or about February 11, 2020, an account on Amazon associated with HAMRICK sold a Fuji 2895-T75G Q5 Platinum Quiet HVLP Spray System with the same name and ASIN as the item HAMRICK had ordered and fraudulently represented that he was returning to Amazon.

3

19. The loss that was reasonably foreseeable to Defendant, pursuant to U.S.S.G. § 2B1.1, was between $250,000 and $550,000.

WILLIAM T. STETZER
ACTING UNITED STATES ATTORNEY

*Maria K. Vento*

MARIA K. VENTO
ASSISTANT UNITED STATES ATTORNEY

### Defendant's Counsel's Signature and Acknowledgment

I have read this Factual Basis, the Bill of Information, and the plea agreement in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis, the Bill of Information, and the plea agreement. I hereby certify that the defendant does not dispute this Factual Basis.

J.P. Davis, Attorney for Defendant                    DATED: 9/15/21

4